J. S83004/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
STUART JAMES PROPER, : No. 1705 WDA 2015
:
Appellant :

Appeal from the PCRA Order, September 23, 2015,
in the Court of Common Pleas of Venango County
Criminal Division at No. CP-61-CR-0000625-2012

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED DECEMBER 21, 2016**

Stuart James Proper appeals from the order of September 23, 2015, denying his PCRA[1] petition.  We affirm.

Following a jury trial held June 10, 2013 to June 11, 2013, appellant was found guilty of various sexual offenses, including rape of a child, involuntary deviate sexual intercourse ("IDSI"), aggravated indecent assault of a child, indecent assault, and corruption of minors.[2]  The charges related to the sexual abuse of his girlfriend's minor daughter, C.C.  In a prior

---

* Retired Senior Judge assigned to the Superior Court.

[1] Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

[2] 18 Pa.C.S.A. §§ 3121(c), 3123(b), 3125(b), 3126(a)(7), & 6301(a)(1)(ii), respectively.

memorandum, this court summarized the factual and procedural history of

the case as follows:

> The victim, C.C., who was eleven years old at the time of the underlying events, lived with her mother ("Mother"), four siblings, and Proper, who was Mother's boyfriend. The jury heard the following testimony:
>
>> [Mother] . . . testified that [C.C.] revealed that [Proper] had "put his fingers up inside her and [made] them go real fast" and that such action had "hurt her up inside." [Mother] also testified that [C.C.] said [Proper] grabbed [C.C.'s] breasts and squeezed them and, at some point, was apparently attempting to enter [C.C.] with his "thing" from behind as they were lying together.[] [Mother] also testified to another encounter [Proper] had with [C.C.] while [Mother] was out shopping with other children for school clothes for [C.C.'s sister, S.C.]. At that time, according to [Mother], [C.C.] told her that [Proper] made her kiss his "thing" and he again put his fingers up inside her and when done, told [C.C.] not to tell "Mama" what happened as it was a secret. . . .
>>
>> The jury also heard testimony from [C.C.]. After establishing the requisite foundation that [C.C.] was a competent witness able to tell the truth and distinguish the difference between a truth and a lie, she corroborated much of the testimony given by [Mother]. [C.C.] testified that the incident occurred in [Mother's] bedroom on the bed where [Proper] squeezed her "boobs" and put his fingers up in her "private spot real hard" and it hurt. [Proper] also kissed

her and "rubbed his [private spot] against her [private spot]." She also testified that when her mother and her siblings went to Walmart, that was the occasion when [Proper] made her "lick his dick." This event also occurred in her mother's bedroom, on the bed. [C.C.] also testified that it was at this time [Proper] put his "dick" in her "private spot" and that when he did so it "hurt." Furthermore, the jury actually heard testimony that [Proper] put his penis inside [C.C.'s] vagina on both occasions when there was a sexual encounter between [Proper] and the victim. Furthermore, [C.C.] testified that when she tried to get away and stop licking [Proper's] "dick," [Proper] put his hand on her head to prevent her from getting away and pushed her back down.

The jury heard testimony from Officer Kevin Daley ("Officer Daley"), senior patrol officer in the Oil City Police Department ("OCPD"). Officer Daley testified that what [C.C.] testified to in court was exactly what she told him at the time she and her mother came to the police station to file the initial report.

Trial Court Opinion, 3/19/14, at 5-7.

On June 11, 2013, a jury convicted Proper of the aforementioned offenses. The court imposed two sentences of ten to forty years' incarceration for rape of a child and IDSI, ten to twenty years' incarceration for aggravated indecent assault, and two sentences of nine months' to five years' incarceration for indecent assault and corruption of minors, with all sentences to run concurrently. Proper filed a post-sentence motion on September 9, 2013, which was denied on December 6, 2013. He filed his notice of appeal on January 2, 2014, and his Pa.R.A.P. 1925(b) concise statement of errors

> complained of on appeal on January 22, 2014. The court filed its Rule 1925(a) opinion on March 19, 2014.

***Commonwealth v. Proper***, No. 36 WDA 2014, unpublished memorandum at 2-3 (Pa.Super. filed July 21, 2014) (brackets in original).

On direct appeal, appellant challenged the sufficiency of the evidence to sustain the verdict. In an unpublished memorandum filed July 21, 2014, this court affirmed appellant's judgment of sentence. ***Commonwealth v. Proper***, 105 A.3d 796 (Pa.Super. 2014) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

On September 5, 2014, appellant filed a timely ***pro se*** PCRA petition. Counsel was appointed and filed several amended petitions on appellant's behalf. An evidentiary hearing was held on June 30, 2015, at which trial counsel, Charles William Phillips, II, Esq., testified. On September 23, 2015, appellant's petition was denied. A timely notice of appeal was filed on October 20, 2015. Appellant complied with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and on February 17, 2016, the PCRA court filed a Rule 1925(a) opinion, relying on its prior opinion and order filed on September 23, 2015.

Appellant has raised the following issues for this court's review:

> [1.] Is trial counsel ineffective when he fails to call [appellant] to testify when his defense is that the victim made up the story and cross examination was largely ineffectual in substantially impeaching the victim[?]

> [2.] Is trial counsel ineffective when he fails to cross-examine a witness on inconsistent prior statements when the defense theory is that the witness made up the story out of animosity toward [appellant][?]

Appellant's brief at 4 (capitalization deleted).

"When reviewing an order [granting or] denying PCRA relief, we must determine whether the PCRA court's determination is supported by the record and is free from legal error." **Commonwealth v. Poplawski**, 852 A.2d 323, 327 (Pa.Super. 2004) (citation omitted). In his first issue on appeal, appellant complains that trial counsel interfered with his right to testify on his own behalf. Appellant argues that Attorney Phillips' advice that appellant not testify was unreasonable where appellant had no prior criminal record and the case boiled down to credibility. We disagree.

> [W]e begin with the presumption that counsel was effective. A claimant establishes ineffective assistance of counsel when he demonstrates that [1] the underlying claim is of arguable merit; [2] that counsel's action or inaction was not grounded on any reasonable basis designed to effectuate the appellant's interest; and finally, [3] that counsel's action or inaction was prejudicial to the client. For an action (or inaction) by counsel to be considered prejudicial to the client, there must be a reasonable probability that the outcome of the proceedings would have been different. All three prongs of this test must be satisfied. If an appellant fails to meet even one prong of the test, his conviction will not be reversed on the basis of ineffective assistance of counsel.

***Commonwealth v. O'Bidos***, 849 A.2d 243, 249 (Pa.Super. 2004), ***appeal denied***, 860 A.2d 123 (Pa. 2004) (citations and internal quotation marks omitted).

> The decision to testify in one's own behalf:
>
>> is ultimately to be made by the accused after full consultation with counsel. In order to support a claim that counsel was ineffective for "failing to call the appellant to the stand," [the appellant] must demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify in his own behalf.
>>
>> ***Commonwealth v. Preston***, 418 Pa.Super. 125, 613 A.2d 603, 605 (1992), ***appeal denied***, 533 Pa. 658, 625 A.2d 1192 (1993) (quoting ***Commonwealth v. Bazabe***, 404 Pa.Super. 408, 590 A.2d 1298, 1301 (1991), ***appeal denied***, 528 Pa. 635, 598 A.2d 992 (1991)). "A claim of strategic error absent a showing of specific incidents of counsel's impropriety will not satisfy this standard." ***Preston***, ***supra*** at 605.

***Commonwealth v. Thomas***, 783 A.2d 328, 334-335 (Pa.Super. 2001).

Instantly, the trial court conducted a thorough and probing colloquy of appellant and informed him of his absolute right to testify on his own behalf:

> THE COURT: Why don't you come on up here, we need to make sure we can hear your responses on there. Mr. Proper, you do understand that you have an absolute right to testify in this case; you have an absolute right not to testify in this case?
>
> [APPELLANT]: M-hmm.

THE COURT: If you decide not to testify, you are entitled to have me give the jury the following instruction and you may decide to waive the court giving this instruction. Now, the instruction that I would read to the jury would be as follows: In this case the Defendant, Stuart Proper, did not take the stand to testify. It is entirely up to the Defendant in every trial whether or not to testify.

[APPELLANT]: Right.

THE COURT: The Defendant has an absolute right to remain silent. That right is founded in our constitution and reflects the code of our founding fathers, that a person charged with a crime has a moral duty to force the government to prove the charges and he need not do or say anything to assist in that endeavor. Therefore, you must not draw any inference of guilt or wrong doing of Stuart Proper from the fact that he did not testify. Now that is the instruction that I would read if you wanted me to read that. Now, let me ask first of all, have you thoroughly discussed with your attorney the pros and the cons of testifying or not testifying.

[APPELLANT]: Yes sir.

THE COURT: Do you realize that you not testifying is a trial strategy decision? In other words, it's a decision you're making as part of your trial strategy?

[APPELLANT]: Yes sir, yeah.

THE COURT: Alright, after having discussed this trial strategy decision with your attorney, have you decided that you do want to or do not want to testify?

[APPELLANT]: I do not want to testify.

THE COURT: Alright, after having discussed this strategy decision with your attorney, have you concluded that testifying is in your -- or not testifying is in your best interest?

[APPELLANT]:  Yes it is, yep.

THE COURT:  Alright, and you do this of your own choice?

[APPELLANT]:  Right.

THE COURT:  Alright, now have you discussed with your attorney whether you want the court to read that instruction or not?

MR. PHILLIPS:  We have and we do.

[APPELLANT]:  We do then.

THE COURT:  Alright[,] you want the court to read that instruction?

[APPELLANT]:  Sure, yeah, Your Honor.

Notes of testimony, 6/11/13 at 4-6.

At the PCRA hearing, Attorney Phillips testified that it was appellant's decision not to testify at trial.  (Notes of testimony, 6/30/15 at 9-10.) Attorney Phillips testified that prior to trial, he and appellant went through a mock direct and cross-examination and "he didn't do very well."  (*Id.* at 9.) During appellant's interview with Officer Daley, he made several incriminating statements, including admitting that he "could have" sexually assaulted C.C., but blaming it on his alcohol problem.  (Notes of testimony, 6/10/13 at 64.)  According to appellant, he drank heavily and would "black out" sometimes.  (*Id.* at 66-67.)  Appellant blamed his ex-girlfriend for allowing C.C. to sleep in their bedroom.  (*Id.* at 64-65.)  Appellant also claimed that on one occasion, C.C. lifted up her shirt and rubbed her breasts

against him. (***Id.*** at 66.) When Officer Daley asked appellant about C.C.'s allegation that appellant forced her to engage in oral sex, he alternately stated that "it could have happened, it probably happened, and 'I'm not sure.'" (***Id.***) Attorney Phillips testified that during the mock cross-examination, appellant had difficulty answering questions about the police interview. (Notes of testimony, 6/30/15 at 8-9.) Appellant ultimately decided it was in his best interests not to testify:

> Q. Now, you said that you did practice questions with him, correct?
>
> A. Yes.
>
> Q. He failed horribly?
>
> A. I think that after we practiced doing the cross or I was -- you know, I just gave him a test of what the district attorney at that time would ask because I had done different things with her so I kind of knew her style. After doing that he came to the conclusion, and I agree with him, that it probably wouldn't be a good idea for him to testify.

***Id.*** at 51. Furthermore, Attorney Phillips was concerned that if appellant took the stand, the Commonwealth would play the videotaped interview with Officer Daley, in its entirety, for the jury. (***Id.*** at 9.) Therefore, Attorney Phillips had a reasonable basis for advising appellant not to testify, and appellant waived that right after a thorough on-the-record colloquy with the trial court. The cases relied upon by appellant are inapposite. ***Cf. Commonwealth v. Breisch***, 719 A.2d 352 (Pa.Super. 1998) (where the

defendant was convicted of forgery and theft stemming from her unauthorized use of 68 checks, trial counsel was ineffective for advising her not to testify since Breisch's sole defense to the crimes for which she was charged was based on her belief that she was authorized to charge expenses to the business and intent to defraud is an element of forgery); ***Commonwealth v. Neal***, 618 A.2d 438 (Pa.Super. 1992) (trial counsel's failure to inform his client of the right to testify constituted interference with such right, and counsel offered no reason to justify why he did not put the defendant on the stand).  There is no merit here.

Next, appellant claims that trial counsel was ineffective for failing to cross-examine C.C. and Officer Daley regarding alleged prior inconsistent statements of C.C.  These alleged inconsistencies related to the number of times she was assaulted by appellant (between 2 and 5), the degree of penile penetration, and the number of times appellant forced her to engage in oral sex.  (Appellant's brief at 15.)

The defense theory was that C.C. and her mother made up these allegations against appellant because they did not like him and wanted to get him out of the house.  On cross-examination of the victim, C.C., Attorney Phillips established that C.C. loved her mother and they got along well.  (Notes of testimony, 6/10/13 at 50.)  Attorney Phillips also established that appellant fought with C.C.'s mother and her siblings and C.C. "didn't like it."  (***Id.*** at 55.)  C.C. testified that appellant "called them retarded and

saying like mean things." (*Id.*) Attorney Phillips also attempted to attack C.C.'s credibility by establishing that on at least one occasion, appellant assaulted her while her mother and siblings were in the house and with the bedroom door open. (*Id.* at 53.) In addition, C.C. testified that she used to have an imaginary friend named Sarah who "was like a ghost." (*Id.* at 48.)

During the PCRA hearing, Attorney Phillips explained his reasons for not going after C.C. harder on cross-examination regarding these alleged inconsistencies:

> Well, now this minor child was, I think she was 12 or 13, I don't recall exactly. She also is, was a little slow, so because of that I couldn't impeach as aggressively as I would like to. I had to not go easy, but it would not serve my client if I made her cry. I was trying to make the things come out that people should take note of like, for instance, it came out I believe during her testimony that while she was in the room with [appellant] her mother was in the other room across the way with the door open. That should've sounded to the jury like, how would this stuff happen if the door is open and the mother is over there? So, I got that to come out. I got that she had imaginary friends, you know, without harping on it, because if the jury hears she has imaginary friends for one reason or another she has an imagination maybe she made all this up. I got that out of her. And there were a few other points, I don't remember, it was a while back and so I did impeach the witness. I did get vital chunks of information out of her. There were a couple other things that were minor like whether she called her mother after one of these instances happened. I believe the child said she did and the mother said later when I went to impeach her that no, she never called. So, there were a few things.

> Q. You didn't impeach her with any prior inconsistent statements?
>
> A. Unfortunately, most of her statements on the tape, at preliminary hearings, at the trial, what she supposedly told other people and all her teachers had testified were very similar.

Notes of testimony, 6/30/15 at 16-17.

Similarly, with regard to C.C.'s inconsistent statements as to the degree of penetration, Attorney Phillips testified as follows:

> Q. So, you will acknowledge that there were some inconsistencies with the victim's statements as to whether there was penetration versus halfway penetration versus whole way penetration?
>
> A. I would expect a 12 year old to probably be confused about it, yes.
>
> Q. And you would agree that you never impeached her or questioned her about these inconsistencies regarding penetration?
>
> A. Well, the way the statute was written if there was any penetration no matter how slight he'd still be breaking the law, so arguing about whether it was three-quarters, five-eighths, it wouldn't help the case.

*Id.* at 21-22.

At trial, C.C. testified that appellant assaulted her on two separate occasions. (Notes of testimony, 6/10/13 at 49.) This was consistent with her preliminary hearing testimony; however, in a prior written statement, C.C. alleged that appellant assaulted her between three and five times.

(Notes of testimony, 6/30/15 at 17-18.)   Attorney Phillips chose not to

pursue this line of attack for obvious reasons:

> Whether it happened two times or three times or five
> times what she said happened was very consistent
> and had I said, wait a minute, you said five times
> before then maybe she would've "remember" [sic]
> other times it happened and it would sound even
> worse.

*Id.* at 19.   As the PCRA court remarked, "Trial counsel felt that allowing the

witness the chance to explain three **additional** sexual assaults would

detrimentally affect his case.   Attorney Phillips also believed it would be

unwise to aggressively cross-examine an eleven year [old] sexual assault

victim.   We concur with Attorney Phillip[s'] rationale."   (PCRA court opinion,

9/23/15 at 18-19 (emphasis in original).)   We agree.   Clearly,

Attorney Phillips articulated a sound and reasonable strategy for

cross-examining the victim, C.C.   This claim fails.[3]

---

[3] In his PCRA petition, appellant also alleged that his sentence was in violation of **Alleyne v. United States**, ___ U.S. ___, 133 S.Ct. 2151 (2013), which held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." **Id.** at 2155.  Issues pertaining to **Alleyne** go directly to the legality of the sentence and are non-waivable.  **Commonwealth v. Fennell**, 105 A.3d 13, 15 (Pa.Super. 2014), **appeal denied**, 121 A.3d 494 (Pa. 2015).  **See also Commonwealth v. Snavely**, 982 A.2d 1244, 1246 (Pa.Super. 2009) ("Challenges to an illegal sentence cannot be waived and may be reviewed **sua sponte** by this Court.") (citation omitted).  Appellant was sentenced on August 30, 2013, after **Alleyne** was decided on June 17, 2013, and he filed a timely PCRA petition.  **See Commonwealth v. Ruiz**, 131 A.3d 54, 59-60 (Pa.Super. 2015) (a defendant can raise an **Alleyne** challenge in a timely PCRA petition so long as his judgment of sentence was not yet final when **Alleyne** was decided on June 17, 2013).  **Cf. Commonwealth v. Washington**, ___ A.3d ___, 2016 WL 3909088 (Pa.

J. S83004/16

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2016

---

July 19, 2016) (refusing to apply **Alleyne** retroactively to cases on collateral review where the defendant's judgment of sentence had already become final before **Alleyne** was decided). However, it appears that appellant received a sentence within the guidelines and he was not sentenced based upon a mandatory minimum. (PCRA court opinion, 9/23/15 at 21-23.)

- 14 -